Good morning, Your Honors. Good morning. My name is Amy Rubin. I'm with the Federal Defenders of Eastern Washington and Idaho, and I represent Mr. Stange. If I could reserve two minutes for reflection. Just watch the clock, Counsel. Thank you, sir. Your Honor, we presented three issues in our appeal, and the issue I'd like to focus on first is whether the district court erred in giving undue consideration of alleged, uncharged, and uncorroborated conduct, and that being a bank robbery. There was no proof or credible evidence to support that in this sentence. Well, the problem I have with your argument is it was in the PSR, was it not? Your Honor — And he didn't object. Well, if I could — if I could go into that, actually, factually. Sure. The PSR goes through the facts as the case unfolded, and what the PSR does is it discusses Mr. Stange's debriefing with the FBI. And, in fact, during that debriefing, Mr. Stange made a statement regarding a bank robbery that occurred in 1997. Factually, that is absolutely correct. The PSR lists the facts that happened in this charge, and we didn't object to that because, factually, that was correct. The PSR also indicates, however, in paragraph, I believe, 49, when it goes and talks about no other offense conduct, that there is none listed. So factually, the pre-sentence report was correct, and that's why we did not object to it at the time. I think what's also very critical in this case is the fact that the — But is there a significant legal difference between that recital of all the facts which would have constituted bank robbery if charged — And a charge or a conviction. Well, I think there is a difference here. I think that if we had — in looking at the PSR, we have to — we have to object to what is incorrect in the pre-sentence report. And I don't think that there was any dispute of the fact that the statement was actually made by Mr. Stange. Our argument is the fact that the — Is he contesting the truth of that statement? I would argue that we are contesting that it was never corroborated, and the fact that the district court views that. Why does it have to be corroborated if he, you know, confessed? Well, the problem in this case, Your Honor, is the fact that you are dealing with a gentleman who spent four days at a VA hospital, who's been diagnosed with PTSD, fairly significant PTSD. In fact, he's 70 percent disabled due to that PTSD. And you're dealing with a gentleman who has been in a VA hospital for four days. He's now on new medication that — that the reports indicate he's still experiencing problems, problems of that being hearing voices, having depression, things of that nature. So did you challenge his admission in the pre-sentence report then on that basis? I'm sorry, Your Honor. I just didn't hear. Did you challenge his admission, which was related in the pre-sentence report, on that basis, that he — that he didn't know what he was talking about or something like that? We didn't challenge it in the pre-sentence report because, as I — as I indicated, the fact that it was factually correct in the fact that the probation officer listed it because of the fact that he gave a statement. And we never really had an opportunity to challenge it at the district court level because if you look at how the sentencing hearing transpired, what's interesting is we go to the sentencing hearing. And, I mean, I think timing is important here, too, because at 930, the sentencing hearing begins. And what happens is that the court — the court brings up, on page 35 of the excerpt of record, discusses the fact that there are two robberies and discusses the fact that the 1997 robbery, it's only the defendant's description. From there, we get into an issue with regard to the court not receiving a mental health report. Court is — is — we take a break, and it's not until about an hour and 15 minutes later that we reconvene for sentencing. At that point, the court asks whether or not we have any objections to the calculations which we did not. And then we proceed in presenting our argument to the court with regard to mitigating factors of that nature and going into the 3553A factors. At that point, the government is able to give their argument in which they discuss the fact that Mr. Stang has two bank robberies. From that point, the judge imposes sentence, and we're really never given an opportunity to object to that because the judge imposes sentence. We don't have an opportunity to respond. He imposes sentence. He — the judge himself, and I think it's on page 69 and 70 of the excerpt of record, discusses the fact that Mr. Stang has twice — has been — has twice committed a bank robbery. So the district court has already concluded that without having any sort of — of evidence presented and with regard to whether or not this was corroborated. And I think the fact that this gentleman has significant mental health issues plays a huge role in this in how reliable that statement actually is. And if the Court — if the Court recalls the case, I believe it was United States v. Jordan in 2001, that case was actually remanded for resentencing because of the fact that the information that was presented had not been corroborated, had not been substantiated, and the Court felt that it had not been proven by clear and convincing evidence, which was a real problem. And it's not to say that this information, maybe if there had been testimony, I think it potentially could have been different, but I think Judge Whaley relied very, very heavily on the fact that he believed Mr. Stang had twice committed this offense, when in looking at his criminal history, he only has one criminal history point. I mean, he's — criminal history one with no criminal history points. There's no indication that this — this prior bank robbery in 1997 was ever charged, ever investigated. And I think that that's a real concern when the Court is relying so heavily on this at sentencing. He brings it up twice that this is conduct that twice occurred. Sotomayor, on a different issue, I read the long psychological report on him. Now, the judge did have that. Yes, he did. There was a little confusion in the judge receiving that, but what happened was when the judge — when we took that break between 9.50, I believe, and 10.45 that morning, both government — counsel for the government, as well as the judge, had an opportunity to review Dr. Mays's report. In reading that report, what the psychologist said was, well, he knew that he was committing the bank robbery, but that he was convinced that he wouldn't have done it if he didn't have this psychological condition. He then goes on to say that this individual is completely or really lacking in judgment and prone to do things that might be very serious or damaging to society. So what do we do with that? Your Honor, I think you have to really look at the big picture here, the whole picture about Mr. Stang and everything that he's been to, being sent to Somalia at such a young age and coming back and suffering. And I guess our argument was that, truly, this case is about giving enough punishment but to pay for the consequences of his actions, but really about rehabilitation, because with the right treatment, with the right medical attention, this is something that I believe, and I think even Dr. Mays indicated, that with a very structured environment, he will be successful. And I think our argument to the Court was that, with regard to the sentence, seven years was sufficient, and the Court should certainly consider all of the other mitigating information to depart downward or at least give something below the advice that he gave. Sotomayor, did Judge Whaley actually take that into account? I think he — Did he reference the service to the country and all of that? He did reference the service to the country, Your Honor. But I think that — and I'll be very quick here so I can save some time. I think, from our perspective, he relied so heavily on the — on his belief that the 1997 bank robbery or alleged bank robbery happened, that it really — I think it took away from him recognizing that he could go below the 33 to 41 months had he considered the other factors substantially more. And that's why you're challenging the reasonableness of the sentence. Yes, Your Honor. All right. I'll just — Thank you, counsel. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court. My name is Joseph Harrington. I'm an assistant U.S. attorney in the Eastern District of Washington, the Spokane office. Mr. Harrington. First, Your Honors, counsel seems to suggest that the defendant didn't have an opportunity to object to that statement about the prior — or the admission about the prior bank robbery during the sentencing hearing. I'd like to refer the Court's attention to excerpt of the record, page 45 and 46. Judge Whaley — Chief Judge Whaley — Did you say 45? Page 45 and 46. Okay. Go ahead. Of the excerpt of the record, Your Honor. Judge Whaley made a record and determined that not only had the defendant reviewed the pre-sentence investigation report, but Judge — Chief Judge Whaley gave the defendant the opportunity to raise any objections to that report and confirm the defendant had no changes to the report itself. The record shows that the Court says, Mr. Stang, have you gone over the pre-sentence report with Ms. Rubin, counsel? The defendant, yes, sir. The Court, do you have any changes or additions you'd like to make, Ms. Rubin, counsel? Your Honor, we actually filed a couple of objections that were already addressed in revised PSR. So there's nothing further we'd like to change. And then Chief Judge Whaley says, all right, can you tell me that, Mr. Stang? Do you have anything else you want to add? The defendant, no, Your Honor. So I would suggest respectfully, Your Honors, that Mr. Stang admitted to the FBI arresting a guy in which he used a firearm, in which he was upset with a bank teller, and even said that he was — Well, see, I think you could tell from our calls with Ms. Rubin that she's not challenging that he said that, and maybe even that he, you know, may have committed robbery. What she's saying is that Judge Whaley gave it too much emphasis and, you know, placed too much dependence upon it in sentencing without, you know, taking sufficient account of his, I'll just call him mental problems, right? Isn't that the real complaint? I understand, Your Honor. First, let me say that a statement or admission like this is clearly admissible under the rule of evidence. It's not deemed a hearsay evidence — hearsay under 801D2 because it's admission by a party opponent. And even if it were deemed hearsay, there's an exception, and that's 804B3. It's a statement against a penal interest. So in this case — Counsel, I was puzzled by the fact that in this long psychological report, he denies any prior criminal involvement in anything. And I think that Judge — Chief Judge Whaley, if I recall the record correctly, says that that report was kind of divided into three sections. The first section was statements the defendant provided to the psychologist and self-serving statements. And Chief Judge Whaley said that he didn't rely too heavily on that first portion because they were, you know, statements by the defendant. But there is this conflict. Certainly, then, the expert's report goes through, Your Honor, and the expert concluded words to the effect that this is an individual who is likely to have committed prior violent crimes. The court — or the psychologist also noted that Mr. Stang is someone that's less morally constrained than the general society. Wait. Did he say anything about prior crimes? I don't remember seeing that. A psychologist. The — and I don't recall specifically about the report, but the psychologist certainly said that his — his — his mental makeup is that of an individual who — who likely has committed prior crimes and violent — I didn't see that. I saw that he had a mental makeup that he didn't know what he'd do from now on. And a callous disregard for others, acting on impulse. There — there was — Counsel, is it significant that we're not talking about a conviction? We're talking about activity, which, if charged, would clearly be a crime and presumably would result in a conviction. Is there a distinction there that's important? Well, let me address this, if I might. Judge, page 68 of the excerpt of the record refers to the psychologist's report in which the psychologist said that the defendant is likely to have committed prior criminal acts, including physical aggression towards others. Give me the — give me the citation. Page 68 of the excerpt of the record. Go ahead. That refers to the psychologist's report. Your Honor, with respect to prior uncharged criminal activity, certainly at a sentencing proceeding, a sentencing court is well within its bounds to look at the characteristics and — and history of a defendant. And certainly, I don't think it would be — it certainly is not inappropriate for a sentencing judge to take those sort of things into consideration, particularly in a case like this where the admitted prior bank robbery was committed similar to this bank robbery in which a gun was used and — and bank tellers were forced to provide money to Mr. Stang during the course of that armed bank robbery. It's interesting, too, Your Honor, because — because that prior bank robbery hadn't been charged and the defendant wasn't convicted of it, his criminal history category ended up being Category 1. And certainly, it wouldn't be unreasonable for a sentencing judge to consider whether his — his criminal history category was underrepresented. And certainly, in this case, there are certain things that Judge — Chief Judge Whaley didn't necessarily consider when calculating the guidelines. And there's no — there's been no dispute that the guidelines were correct — correctly calculated. But what weren't — what wasn't considered was whether — this is a case that requires at least a — a suggestion that this defendant's criminal history category was underrepresented, pushing him into a higher criminal history category. The — the way that the bank robbery guidelines played out in this case, there is — there was no increase or — or no adjustments under the guidelines for this type of a takeover bank robbery. There was nothing that was increasing the guidelines for the fact that Mr. Stang forced bank customers to lay prone on the ground during this takeover bank robbery. There was nothing specifically in the guideline application that would have adjusted the guideline up for not only — I understand that Mr. Stang brandished the firearm, but nothing specifically for actually sticking and pointing that gun and pointing it at the bank tailors during the course of the robbery. And I'm referring to photographs attached to the brief. And the — the guidelines themselves didn't consider all these other extreme factors, which I guess I would respectfully submit that some — if you talk to that bank customer, he may have a different idea of what a reasonable sentence should be in this case, particularly given the fact that Mr. Stang has these mental — a mental makeup involving callous disregard for others and is less morally culpable. So that gets to the question about whether the sentence that was actually imposed by Chief Judge Whaley was — was reasonable or stated a different way, or whether that was unreasonable. And in this case, Your Honor, Your Honors, Chief Judge Whaley determined that the low end of the guideline range was a reasonable sentence. I think a credible argument could be made, although it hasn't been made by the government, that maybe that is an unreasonable sentence given the fact of all these additional aggravating circumstances. It seems as if — and Judge Whaley even said that this is a type of case that gave him difficulty and problems because of the violent nature of the crime. And Judge Whaley gave the defendant the benefit of the doubt in this instance. Again, I would respectfully submit that if you talk to that bank customer who was forcibly thrown on the ground or on the bank floor during the robbery, he may not give the benefit of the doubt to the defendant. And he may say the benefit of the doubt should go to me, the victim. So in — in some, Your Honor, a 33-month sentence, which is the low end of the guideline range, certainly was — I would submit at least it falls within Judge Whaley's determination of a reasonable sentence. And that — But that's on top of the — Seven-year. Correct, Your Honor. And that's — that's interesting because I think that the use and possession of a firearm during a crime of violence goes to a whole other policy determination about trying to keep firearms out of violent criminals' hands. And so, really, that is not a dispute. It hasn't really been raised on appeal. What's — what's the issue here is what is a reasonable sentence for this violent takeover robbery? I think the defendant is suggesting that any sentence with it falls within the guidelines is inappropriate. And I would respectfully disagree with that position. Thank you, counsel. Ms. Rubin, you have some reserve time. In listening to Mr. Harrington, what I'd like to respond to is, is I think our biggest concern is the fact that Judge Whaley basically concluded — I think it's fair to say that he concluded that this robbery happened in 1997. If the Court looks at page 69 of the excerpt of record, Judge Whaley, I've got an offense that bothers me, and I've got it happening — happened twice, once in Olympia and once here, once in 97, once last year in their violent. Page 70, considering all that, there's a part of me that thinks the guideline sentence is not long enough because someone who has committed a violent offense twice. I think that this brings real concern, because what this allows for is that if we have PSRs that — that have testimony from witnesses and — Well, but — but, Tim, we're — we're back, I think, over old ground. Did you say to Judge Whaley — well, you know, Judge Whaley, we contest that. Our position is that — that nothing like that ever happened. Did you say that? I did not say that. But, Your Honor, if the Court looks at the record at the sentencing hearing, I had one opportunity to speak, and the Court at the beginning of that sentencing hearing discusses the fact that there's offense conduct — I mean, there's indication that this happened twice, but it's based only on the defendant's statement. Well, just a minute. We say, yeah, one opportunity. At some point, you say, well, Your Honor, there's something else I have to put on the record here. You didn't do that, did you? We didn't do that, Your Honor. But I believe that we weren't given the opportunity, because as soon as Mr. Harris — Well, I think Judge Whaley would have, you know, I'm speculating, would have tolerated that. I — I mean — It's my opinion, but — And he may have, Your Honor. But I think the problem is, is when we — when the government sat down, we got up and Judge Whaley immediately went into imposing the sentence. And so I don't think that we ever, number one, got the opportunity to reply to the government, and, number two, at the end of his sentence, he then gave the notice of appeal rights. So there was really not an appropriate time during that sentencing hearing to respond. And I think I'm out of time, unless you have questions. Thank you. Thank you very much, Counsel. The case just argued will be submitted for decision, and the Court will adjourn. Yes. Thank you. You're welcome.  Your Honor. Your Honor. Your Honor. Your Honor. Your Honor. Your Honor. Your Honor. Your Honor. Your Honor. Your Honor. Your Honor. Your Honor. Your Honor.
judges: B. Fletcher, O'scannlain, Tashima